# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 467 | DATE | 7/5/2001 |
| CASE TITLE | ISMAEL YANEZ vs. ERIC HOLDER | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
|---|---|---|
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] Enter Memorandum Opinion And Order. Petitioner's Writ of Habeas Corpus is denied. |
| (11) | ☒ | [For further detail see order (on reverse side of/attached to) the original minute order.] |

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 9 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL -6 PM 3: 15 | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ISMAEL YANEZ,
SENGCHANH PHENGPHONSAVANH,
BERNARDO GARZA-GARZA, SOKHA PONN,
and GUSTAVO REYES-RAMIREZ,

    Petitioners,

v.

ERIC HOLDER, Interim Attorney General of the
UNITED STATES, and BRIAN PERRYMAN,
District Director, Immigrations and Naturalization
Service, Chicago, Illinois,

    Respondents.

No. 01 C 0467

Judge John W. Darrah

DOCKETED JUL 9 2001

## MEMORANDUM OPINION AND ORDER

Petitioners filed a Petition for Habeas Corpus, alleging that Section 236(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1126(c), violates the Fifth Amendment of the United States Constitution. Petitioners request that this Court order bond hearings while the petitioners' removal proceedings are pending.

I. BACKGROUND

Ismael Yanez (Yanez) is a native and citizen of Mexico and a lawful permanent resident of the United States. In January 1998, Yanez was convicted of the possession of a controlled substance and sentenced to one-year probation. In May 1999, Yanez was convicted of possession of a controlled substance and sentenced to eighteen months' probation and ninety days' incarceration.

In March 2000, the Immigration and Naturalization Service (INS) issued Yanez a Notice to Appear for removal proceedings, alleging that Yanez was removable from the United States as an

"aggravated felon" under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1127(a)(2)(A)(iii), for his controlled substance convictions. The INS alleged that Yanez's two possession of a controlled substance convictions amount to a "drug trafficking crime" under INA § 101(a)(43)(B), 8 U.S.C.§ 1101(a)(43)(B). The INS also charged Yanez under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), for having been convicted of an offense involving a controlled substance.

Upon completion of his sentence, Yanez was transferred into INS custody. At a March 2000 hearing at the Immigration Court in Chicago, Yanez did not dispute the second ground for removal but denied the aggravated felony charge alleged by the INS. He argued that his two convictions did not amount to "drug trafficking" under the INA and that, because he is not an "aggravated felon", he is eligible for discretionary relief from deportation. The Immigration Judge rejected Yanez's arguments and found that his second conviction for possession of a controlled substance rendered him deportable for a "drug trafficking offense." The Judge found that Yanez was not eligible for any relief from removal and ordered him deported from the United States.

Yanez appealed the Immigration Judge's decision to the Board of Immigration Appeals (BIA). The appeal is currently pending, and Yanez remains in INS custody. Yanez argues that if he is successful in his appeal and is found not to be an "aggravated felon", he is eligible for discretionary relief from deportation pursuant to 8 U.S.C. § 1229b(a).

Sengchanh Phengphonsavanh (Phengphonsavanh) is a lawful permanent resident of the United States. In March 1999, Phengphonsavanh was convicted of driving or operating a motor vehicle without the owner's consent and was sentenced to one year's incarceration. Subsequently, the INS issued a Notice to Appear for removal proceedings to Phengphonsavanh, charging him as removable for having committed an "aggravated felony" under INA § 101(a)(43)(F),

8 U.S.C. § 1101(a)(43)(F) and INA 101(a)(43)(G), 8 U.S.C. § 1101(a)(43)(G). After serving his sentence, Phengphonsavanh was taken into INS custody.

In June 2000, Phengphonsavanh appeared before an Immigration Judge who ordered him deported as an "aggravated felon". Phengphonsavanh appealed the Immigration Judge's decision to the BIA. Following the June hearing, the Immigration Judge also found that Phengphonsavanh was eligible for bond under INA § 236(c) but denied his request for bond. Phengphonsavanh appealed the denial of his bond to the BIA.

In December 2000, the BIA dismissed Phengphonsavanh's bond appeal, holding that the mandatory detention provision of INA § 236(c) precluded Phengphonsavanh's release on bond. Phengphonsavanh's appeal on the merits of his removal remains pending before the BIA, and Phengphonsavanh remains in INS custody. Phengphonsavanh argues that if he is found not to be an "aggravated felon", the INS has no jurisdiction over him, and the proceedings should be terminated.

Bernardo Garza-Garza (Garza) is a lawful permanent resident of the United States. In 1995 and 1998, Garza was convicted of two separate offenses of unlawful use of a weapon. In June 2000, both offenses were vacated *nunc pro tunc*, and Garza was convicted of Class A misdemeanor of unlawful use of a weapon. For these offenses, Garza was sentenced to one year of probation.

In June 1999, Garza pled guilty to possession of a stolen motor vehicle and was sentenced to three years' incarceration. In lieu of incarceration, Garza was recommended for impact incarceration. However, because the INS issued a detainer against Garza after his conviction, it was determined that he was not eligible for impact incarceration; and he, thereafter, served one year in the Illinois Department of Corrections.

After completing his sentence, Garza was taken into INS custody and detained without bond. The INS issued Garza a notice stating that he was ineligible for release on bond pursuant to INA § 236(c).

Garza admits that he is deportable on grounds he was convicted of a firearm charge. At his removal hearing, Garza challenged the INS's aggravated felony charge and argued that, if he is not an aggravated felon, he is eligible for discretionary relief from removal under INS § 240A. The Immigration Judge found that the INS sustained the "aggravated felony" charge. Nevertheless, the Immigration Judge heard testimony on Garza's application for Cancellation of Removal. After hearing the testimony, the Immigration Judge found that should Garza's "aggravated felony" finding be reversed by the BIA, Garza merited cancellation of his removal under INS § 240A.

Garza appealed the Immigration Judge's finding that he was an "aggravated felon" to the BIA. Garza's appeal is pending, and he remains in INS custody. Garza argues that, if he is found not to be an aggravated felon, he is eligible for discretionary relief from deportation pursuant to 8 U.S.C. § 129b(a).

Sokha Ponn (Ponn) entered the United States as a refugee in 1984 at the age of five. Ponn is not a lawful permanent resident of the United States. In November 1998, Ponn was convicted of two counts of burglary to a building based on two separate offenses in July and August 1998. Ponn pled no contest to the offenses and was sentenced to two years' imprisonment for the first offense and five years' probation for the second offense.

While he was serving his prison sentence, the INS issued Ponn a Notice to Appear for removal proceedings. The INS charged that Ponn was an "aggravated felon" and that he was removable from the United States under INA § 237(a)(2)(A)(iii) or INA § 101(a)(43)(G) for having

committed a theft offense or burglary offense for which the term of imprisonment is at least one year.

In June 2000, Ponn finished serving his prison sentence and was transferred to INS custody. At an Immigration Court hearing in October 2000, Ponn denied the INS's removability charge and argued that his guilty plea did not constitute a "conviction" under the INA. He also argues that his offenses should be considered under the Federal Juvenile Delinquency Act, 18 U.S.C. § 503 (FDJA) because he was seventeen years old at the time of the commission of the crime and under twenty-one when he was convicted.

At a January 2001 hearing, an Immigration Judge found Ponn was removable from the United States as an "aggravated felon". The Judge considered the merits of Ponn's two applications for relief, denied both requests for relief, and ordered Ponn removed to Cambodia. Ponn appealed the Judge's decision. The appeal is pending, and Ponn remains in INS custody. Ponn argues that, even if his offenses are found to constitute "aggravated felonies", he is still eligible for relief from removal if he adjusts his status from refugee to lawful permanent resident and his criminal offenses are waived for humanitarian purposes. In addition, he argues that he is eligible to apply for relief under Article 3.1 of the United Nations Convention Against Torture.

Gustavo Reyes-Ramirez (Reyes) entered the United States in 1986. Reyes is not a lawful permanent resident of the United States. In 1997, Reyes was charged with possession of a controlled substance. Reyes pled guilty and was sentenced to two years' probation. In June 2000, Reyes' probation was revoked, and he was sentenced to one year incarceration. Reyes served sixty-one days of his sentence and was released into INS custody.

The INS issued a Notice to Appear, alleging Reyes was removable from the United States under INA § 237(a)(2)(B), 8 U.S.C. § 1227(a)(2)(B). The INS also charged Reyes with remaining

in the United States for a time longer than permitted under INA § 101(a)(15), 8 U.S.C. § 1101(a)(15).

In September 2000, Reyes had a bond hearing before an Immigration Judge. The Immigration Judge found that Reyes was subject to mandatory detention under INA 236(c). In a December 2000 hearing, Reyes denied the INS removability charge, arguing that his offense should be evaluated under the FDJA because he was seventeen years old at the time of the crime's commission and he was under twenty-one at the time of his conviction. Reyes argues that if he is not found to be an "aggravated felon", the INS does not have jurisdiction over him and that the proceedings should cease and that he also can seek relief from deportation because he fears returning to Guatemala.

II. ANALYSIS

Respondents first argue that the petitioners have failed to exhaust available administrative agency remedies. Petitioners argue that they are not required to exhaust their administrative agency remedies pursuant to the exceptions found in *McCarthy v. Madigan*, 503 U.S. 140 (1992) (*McCarthy*).

In general, parties must exhaust available administrative agency remedies before seeking relief from the federal courts. *McCarthy*, 503 U.S. at 144-45. Exhaustion of administrative agency remedies is not required if: (1) such requirement would subject an individual to an unreasonable or indefinite time frame for administrative action or (2) the administrative agency lacks the competence to resolve the particular issued presented or (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has pre-determined the issue before it. *McCarthy*, 503 U.S. at 146-48.

In the instant case, petitioners challenge the constitutionality of § 236(c). Administrative agencies may consider constitutional claims; however, they lack the authority to "deal with them dispositively; the final say on constitutional matters rests with the courts." *Singh v. Reno*, 182 F.3d 504, 510 (7th Cir. 1999); *see also, McCarthy*, 503 U.S. at 147-48. Based on an administrative agency's diminished authority to dispose of constitutional issues, the courts have waived the exhaustion of administrative remedies for immigrants whose cases present constitutional issues. *See e.g., Castaneda-Suarez v. INS*, 993 F.2d 142, 144 (7th Cir. 1993); *Welch v. Reno*, 101 F.Supp.2d 347, 351-52 (D. Md. 2000) (*Welch*); *Baidas v. Jennings*, 123 F.Supp.2d 1052, 1057 (E.D. Mich. 1999) (*Baidas*). Accordingly, petitioners are not required to exhaust the alleged available administrative remedies, and respondents' assertion of the "exhaustion" doctrine is without merit.

Petitioners allege that § 236 is unconstitutional because they are held without the availability of a bond hearing in violation of their due process rights under the Fifth Amendment of the United States Constitution.[1]

Petitioners do not specify if they challenge § 236 on its face or only as applied to them. To mount a facial challenge to the statute, the petitioners would have to show that no set of circumstances exists under which the statute would be valid. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (*Salerno*). Section § 236 has been found constitutional under the facts set forth in *Parra v. Perryman*, 172 F.3d 954, 957-58 (7th Cir. 1999) (*Parra*). Therefore, any argument that § 236 is *per se* unconstitutional fails.

Accordingly, the Court addresses petitioners' allegation that § 236(c) violates the petitioners'

---

[1]Although as noted earlier, petitioners Phengphonsavanh and Reyes have been afforded such a hearing, and bond was denied.

7

due process rights under the Fifth Amendment of the United States Constitution as applied to the petitioners.

All of the present petitioners have been found to be removable from the United States as "aggravated felons" pursuant to Sections 1226 and 1227 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). All of the petitioners contest the finding of removability, and none have received a final removal order. All of the petitioners have been denied release on bond pursuant to Section 236(c) of the INA, 8 U.S.C. § 1226(c)(1), as amended by the IIRIRA. Lastly, three of petitioners are lawful permanent residents of the United States (Yanez, Phengphonsavanh, and Garza); and two of the petitioners are not lawful permanent residents (Ponn and Reyes).

Section 236(c)(1) states that the Attorney General "shall take into custody any alien who" is removable for a number of reasons, including an alien determined to be an aggravated felon under § 1227(a)(2)(A)(iii). A person taken into custody pursuant to § 236(c)(1) may be released under § 236(c)(2) but only if they are part of the witness protection program. *See Parra*, 172 F.3d at 956.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 307 (1993) (*Reno*). This protection applies to both aliens that legally and illegally are in the United States. *See Plyer v. Doe*, 457 U.S. 202, 210 (1982). "[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residency, his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (*Landon*). The Fifth Amendment provides both a procedural and substantive due process requirement. The procedural due process requirement prohibits the government from depriving an individual of life, liberty, or property in an unfair manner. *See Mathews v. Eldridge*,

424 U.S. 319, 355 (1976) (*Mathews*). The substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights implicit in the concept of ordered liberty. *Salerno*, 481 U.S. at 746.

*Parra* is the only circuit court opinion to consider the constitutionality of § 236(c). In *Parra*, the petitioner was found to be a removable alien because of his criminal conviction and that Mexico accepted his return as one of its citizens. *Parra*, 172 F.3d at 957. The Seventh Circuit found that § 236(c) was constitutional. The court recognized that the petitioner in *Parra* asserted a liberty interest to stay in the United States. However, the petitioner was no longer entitled to remain in the United States and he conceded such fact. *Parra*, 172 F.3d at 957-58. In the cases presented herein, the petitioners argue that they have not conceded that issue, and the question of removal is still viable. They contend that *Parra* is not controlling because the petitioners do not concede their deportability and have contested the Immigration Judges' rulings as to their removability and have not received a final removability order. Respondents allege that *Parra* controls and compels the denial of the petition without requiring a due process analysis.

At issue, therefore, is the application of *Parra* to persons whose final legal status to remain in the United States is still at issue on appeal to the BIA.

The *Parra* court found that "[p]ersons subject to [236(c)] have forfeited any legal entitlement to remain in the United States and have little hope of clemency ... [petitioner's] legal right to remain in the United States has come to an end." *Parra*, 172 F.3d at 958. The court noted that, under the procedural due process test in *Mathews*, 424 U.S. at 355, the petitioner's private interest in freedom from incarceration was minimal, given that he was no longer entitled to live at liberty in the United States, that the probability of administrative error was nonexistent because he conceded his

9

deportability, and that the public interest was great, given the high rate of pre-deportation flight. *Parra*, 172 F.3d at 958.

Federal district courts, including the Northern District of Illinois, have also found that § 236(c) does not violate the due process requirement of the Fifth Amendment. *See .e.g., Kahn v. Perryman*, 2000 WL 1053962 (N.D.Ill. Jul. 31, 2000) (*Kahn*); *Marogi v. Jenifer*, 126 F.Supp.2d 1056,1062-66 (E.D. Mich. 2000) (*Marogi*); *Avramenkov v. INS*, 99 F.Supp.2d 210, 215-18 (D. Conn. 2000) (*Avramenkov*); *Okeke v. Pasquarell*, 80 F.Supp.2d 635, 638 (W.D. Tex. 2000); *Reyes v. Underdown*, 73 F.Supp.2d 653, 658 (W.D. La. 1999) (*Reyes*); *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1132-35 (S.D. Cal. 1999) (*Alikhani*); *Galvez v. Lewis*, 56 F.Supp.2d 637, 645-48 (E.D. Vir. 1999) (*Galvez*).

In *Kahn*, the court found that the petitioner, who was unable to deny his status as an aggravated felon or his removability, was in the same position as the petitioner in *Parra*. As such, the court found the holding in *Parra* controlling and held that § 236(c) was constitutional as applied to the facts of that case. *Kahn*, 2000 WL 1053962 at * 2.

Other district courts have found that § 236(c), as applied to facts similar to those in the case at bar, does violate due process. *See e.g., Cardoso v. Reno*, 127 F.Supp.2d 106, 109-116 (D. Conn. 2001) (*Cardoso*); *Small v. Reno*, 127 F.Supp.2d 305, 310-322 (D. Conn. 2000) (*Small*); *United States v. Zemski*, 121 F.Supp.2d 814, 816-17 (E.D. Penn. 2000) (*Zemski*); *Koita v. Reno*, 113 F.Supp.2d 737, 740-41 (M.D. Penn. 2000) (*Koita*); *Welch*, 101 F.Supp.2d at 353-56; *Baidas*, 123 F.Supp.2d at 1058-60. In these cases, the courts distinguished the petitioners from *Parra* because, unlike the petitioner in *Parra*, the petitioners had not conceded their removability. *See e.g., Cardoso*, 127 F.Supp.2d at 112.

A Northern District Court, in *Tiv v. Reno*, 2000 WL 246252 (N.D.Ill. Feb. 24, 2000) (*Tiv*), also rejected the government's argument that *Parra* foreclosed on any challenges to the constitutionality of § 236. The *Tiv* court, in addressing the government's motion to dismiss a habeas corpus petition, found that the *Parra* opinion could not be said to close the door to all habeas corpus claims challenging the constitutionality of the mandatory custody provision of § 236(c). Citing to dicta in *Parra* in which the Seventh Circuit hypothesized some cases may be appropriate for a Writ, such as an alien who contends that they have not been convicted of one of the felonies that authorizes removal (*Parra*, 172 F.3d at 957), the *Tiv* court found that the petitioners in *Tiv* were distinguishable from *Parra* because the *Tiv* petitioners had not conceded their deportation. While not determining if § 236(c) was unconstitutional, the court denied the respondent's motion to dismiss based on this distinguishing fact. 2000 WL 246252 at * 5-6.

Based on the rationale of those cases cited in the preceding paragraph, the present petitioners contend that they are distinguishable from those in *Parra* because they continue to contest their removability and they have not received a final removability order. In *Parra*, the court noted that the reason *Parra's* claim lacked merit was because he had already conceded removal and was merely "postponing the inevitable." *Parra*, 172 F.3d at 958. Here, the petitioners are not merely "postponing the inevitable" but contest the grounds for their deportation on appeal to the BIA and, if successful in overturning the rulings of the Immigration Law Judge, may be able to avoid removal from the United States. Therefore, based on these facts, the present case is distinguishable from *Parra*, and *Parra* does not foreclose a due process analysis of the application of § 236(c) to these facts. *See Tiv*, 2000 WL 24625 at * 6 ("*Parra* does not appear to decide whether people who do contest removability and who have legitimate defenses to raise may be mandatorily detained without

violating their due process rights"); *Cardoso*, 127 F.Supp.2d at 112 (petitioner's claim distinguishable from *Parra* because petitioner might still avoid deportation under INS §240A); *Koita*, 113 F.Supp.2d at 740 (*Parra's* reasoning does not apply because petitioners have not conceded removability); *Baidas*, 123 F.Supp.2d at 1060 (distinguishing *Parra* based on petitioner not conceding removability).

A. Substantive Due Process

The scope of constitutional protections in deportation is more narrow than in a criminal proceeding. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038-39 (1984). As such, the most demanding standard applicable to the present case is set forth in *Salerno*. *See Salerno*, 481 U.S. at 747 (Supreme Court addressed a due process challenge to the Bail Reform Act); *see also,* Cardoso, 127 F.Supp.2d at 113; *Welch*, 101 F.Supp.2d at 355; *Rogowski*, 94 F.Supp.2d at 184; *Reyes*, 73 F.Supp.2d at 657; *Galvez*, 56 F.Supp.2d at 646-47; *Diaz-Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1119 (S.D. Cal. 1999) (*Diaz-Zaldierna*) (all applying *Salerno* analysis to substantive due process claim of § 236(c)).

Applying the *Salerno* test, § 236(c) will be upheld if the statute is regulatory in nature and not excessive to its purpose. *Salerno*, 481 U.S. at 747. Deportation is not a criminal proceeding, and its purpose is not punitive. *Carlson v. Landon*, 342 U.S. 524, 537 (1952) (*Carlson*). Accordingly, § 236(c) is regulatory in nature. *Cardoso*, 127 F.Supp.2d at 113; *Welch*,101 F.Supp.2d at 355; *Reyes*, 73 F.Supp.2d at 657.

The next step under *Salerno* is to determine whether the regulation is excessive in furthering the legislative objective. The purpose of mandatory detention under § 236(c) is the protection of the public from potentially dangerous criminal aliens, preventing aliens from absconding during removal

12

procedures, correcting procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings, and restoring public faith in the immigration system. *See* S.Rep. No. 104-48, 1995 WL 170285 at 1-6, 9; *Cardoso*, 127 F.Supp.2d at 113.

In the instant case, all of the petitioners were convicted of criminal offenses, and they do not contest such convictions. The mandatory detention imposed by § 236(c) is limited to aliens who have been convicted of certain enumerated crimes, including aggravated felonies and controlled substance violations. Congress, by mandating the detention of aliens who have committed such crimes, presumes that such aliens pose a danger to the community and/or pose a flight risk. Detention of the petitioners furthers Congress's legitimate goal of protecting the public. Accordingly, § 236(c) does not violate petitioners' substantive due process rights because the means that Congress chose to further its legislative regulatory goals are not excessive. *See Avramenkov*, 99 F.Supp.2d at 217; *Reyes*, 73 F.Supp.2d at 657-58; *Galvez*, 56 F.Supp.2d at 647; *Diaz-Zaldierna*, 43 F.Supp.2d at 1120; *see also, Parra*, 172 F.3d at 958 ( "[p]ersons subject to [236(c)] have forfeited any legal entitlement to remain in the United States and have little hope of clemency ... [petitioner's] legal right to remain in the United States has come to an end").

B. Procedural Due Process

"Procedural due process" requires that, "when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746. In determining whether implementation of a government action is fair, the court evaluates: (1) the private interest that will be affected by the official action; (2) the probability of error and the effect of additional safeguards on that rate of error; and (3) the government interest involved, including the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335.

Here, the petitioners' private interest is the right to be free from indefinite and possibly long-term detention. As noted above, unlike the petitioner in *Parra*, the present petitioners do not concede their removability and argue on appeal of that determination that they are still entitled to remain in this country. Accordingly, the petitioners do have a strong liberty interest that is implicated by § 236(c).

As to the second factor, there is little probability of error because the petitioners do not dispute their convictions. *See Parra*, 172 F.3d at 958 ("Persons subject to § 1226(c) have forfeited any legal entitlement to remain in the United States...."); *Avramenkov*, 99 F.Supp.2d at 216. In addition, the provision of additional procedural safeguards - based on the myriad of the specific grounds for each appeal - would also be unreasonably burdensome to the government. Such safeguards would also be of little value to a criminal alien, given that such aliens have a slight chance, if any, of relief from removal. Furthermore, the government has a substantial interest in ensuring the presence of criminal aliens who have obvious motivation to flee during the removal process. Weighing these factors and given the broad powers Congress possesses to prescribe the treatment of aliens, *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977), the denial of an individualized bond hearing to petitioners who have been found to be criminal aliens detained pursuant to § 236(c) is not a violation of procedural due process. *See Parra*, 172 F.3d at 957-58; *Marogi*, 126 F.Supp.2d at 1066; *Avramenkov*, 99 F.Supp.2d at 216-17; *Reyes*, 73 F.Supp.2d at 658; *Alikhani*, 70 F.Supp.2d at 1135.

The United States Supreme Court has recently decided a case involving the rights of detained aliens. *Zadvydas v. Davis*, __ U.S. __ (2001), 2001 WL 720662 (June 28, 2001) (*Davis*). The

present case presents a different statute and materially different facts.

In *Davis*, the Supreme Court held that 8 U.S.C. § 1231(a)(6), which allows for the detention of aliens beyond the removal period, contained an implicit "reasonable time" limitation, the application of which was subject to federal court review. *Davis*, 2001 WL 720662 at * 3. The Court found that an alien who has been found to be removable from the United States but who is unable to be removed from the United States because no other country will accept the alien has a strong liberty interest that presents a serious question whether the Constitution permits detention that is not only indefinite but potentially permanent. *Davis*, 2001 WL 720662 at * 11-12.

Having found this "constitutional problem", the Court continued its analysis to determine if Congress made its intent clear, requiring the Court to give effect to such intent. *Davis*, 2001 WL 720662 at * 12. The Court found that the statute did not clearly indicate an intent by Congress to grant the Attorney General the power to hold an alien indefinitely that had been ordered removed. The Court found that the statute's use of the word "may", while suggesting discretion on the part of the Attorney General, did not suggest unlimited discretion. The Court also distinguished the statute in the present case (8 U.S.C. § 1226(c)) from the statute in question in *Davis* (8 U.S.C. § 1231) in that § 1226(c) had a termination point and that § 1231 did not have a termination point. *Davis*, 2001 WL 720662 at * 13. The Court recognized, in construing 8 U.S.C. § 1231, that a six-month presumption of reasonable detention should be read into the statute. The Court noted that this period did not require that every alien not removed must be released after six months. Instead, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonable foreseeable future." *Davis*, 2001 WL 720662 at * 15.

Unlike the statute at issue in *Davis*, the statute in the present case clearly indicates

congressional intent to grant the Attorney General the authority to indefinitely confine an alien that is found deportable by reason of being an aggravated felon. Section 1226 (c) states that the Attorney General "<u>shall</u> take into custody any alien ..." and allows the release of an alien described in the statute "<u>only if</u>" the alien is part of the witness protection program. 8 U.S.C. § 1226 (c); *Parra*, 172 F.3d at 956. Unlike § 1231, which uses the term "may", allowing discretion by the Attorney General in making his or her determination of release, Section 1226 clearly mandates detention and specifically states when release may take place. In addition, unlike *Davis*, there is no suggestion that there is no significant likelihood of removal of the instant aliens in the reasonably foreseeable future because there is no indication that the aliens in the instant case cannot be removed to another country. Furthermore, as found by the *Davis* Court, aliens held pursuant to § 1226 have a foreseeable detention termination point, and aliens held pursuant to § 1231 do not. Accordingly, *Davis* does not control the present case nor lend support to petitioners' argument.

III. CONCLUSION

For the reasons stated above, petitioners' Writ of Habeas Corpus is denied.

Dated: July 5, 2001

JOHN W. DARRAH

United States District Judge

16